**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **NORTHSHORE STEEL, INC.,** | |
| **Plaintiff,** | **CASE NO. 08 CV 2147** |
| **vs.** | |
| **RELIABLE GALVANIZING COMPANY,** | **JUDGE  PALLMEYER** |
| **Defendant.** | **MAG. JUDGE DENLOW** |

**DEFENDANT RELIABLE GALVANIZING COMPANY'S 12(b)(6) MOTION TO**
**DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

Reliable Galvanizing Company ("Reliable") moves to dismiss Northshore Steel, Inc.'s

("Northshore") claim for breach of implied warranty (Count II) as well as its claim for extra-

contractual damages, which are excluded under the parties' agreement.

**I.      INTRODUCTION**

This is a simple breach of contract case between two commercial entities.  Northshore

engaged Reliable to galvanize steel trusses that Northshore fabricated.  Northshore claims that

some of these galvanized trusses were damaged when they arrived at the customer's site.

Northshore now seeks extra-contractual damages in the amount of $260,172.82 because

Northshore's customer demanded that these trusses undergo strength tests to ensure their quality.

Northshore's claim for these extra-contractual damages in Count III can not stand, and should be

dismissed, because its agreement with Reliable limited Northshore's remedy to "reprocessing" of

the trusses or "repayment" of its processing charges.  Northshore sought neither.  Count II of

Northshore's Amended Complaint, which alleges breach of implied warranty, should also be

dismissed.  The parties' agreement was predominantly one for services and did not involve the

sale of goods.  Therefore, the UCC does not apply and no implied warranties exist.  Even if the

UCC applies, Northshore would still not have an implied warranty claim because the parties' agreement effectively disclaimed such warranties. Therefore, Reliable's motion to dismiss Count II with prejudice should be granted.

## II.    NORTHSHORE'S ALLEGATIONS

Northshore is a truss manufacturer. (Amend. Compl. at ¶1). In Spring, 2006, Northshore needed to have certain trusses galvanized for a Consumers Energy construction project in Michigan. (Amend. Compl. at ¶3). Northshore alleges that Reliable, an Illinois galvanizing company, agreed to galvanize these trusses and ship them F.O.B. to the Consumers Energy construction site in Michigan. (Amend. Compl. at ¶3).

Northshore further acknowledges that Reliable performed the galvanizing and invoiced Northshore accordingly. (Amend. Compl. at ¶6). Northshore claims, however, that when these trusses arrived at Consumers Energy's site in Michigan they were damaged. (Amend. Compl. at ¶9). This alleged damage caused Consumers Energy to require "load test[ing] and other testing be performed to determine [the trusses] integrity." (Amend. Compl. at ¶11). Due to the cost of this load testing, Northshore seeks $269,556.82 from Reliable in total damages even though the total amount of the two Reliable invoices for Northshore attached to its complaint (Exhibit B) equal $9,384.00. (Amend. Compl. at ¶¶6, 14 and 23).

Exhibit C of the Amended Complaint is the front pages of two Reliable invoices. Northshore, however, conspicuously failed to attach the back side of Reliable's two-sided invoices, which contain in bold capitalized letters the "**TERMS AND CONDITIONS OF SALE.**" A true and correct copy of the complete two-sided invoices are attached to this motion as Exhibit 1. For purposes of this motion, the complete two-sided invoices are referred to as the "Agreement".

The following terms and conditions of the Agreement are pertinent to this motion:

6.    THERE ARE NO EXPRESS WARRANTIES HEREUNDER.  THERE ARE NO IMPLIED WARRANTIES, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, EXCEPT THAT GOODS WILL COMPLY WITH THE DESCRIPTION CONTAINED ON THE FACE OF THIS INVOICE/ACKNOWLEDGEMENT SUBJECT TO STANDARD MANUFACTURING VARIATIONS.

11.    Processor is not responsible for material warpage, buckling, blistering or breaking whenever such conditions are incidental to the process of hot-dip galvanizing.  The processor will assume no responsibilities for ungalvanized areas due to the presence of welding flux.

12.    Customers remedies with respect to any goods processed shall be limited exclusively to the right of reprocessing such goods or to repayment of the processing charges.

(Exhibit 1 at ¶¶6, 11, 12).

Northshore filed its Amended Complaint on June 2, 2008.  In its three count Amended Complaint, Northshore asserted two causes of action: Count I - breach of contract; Count II - breach of implied warranties.  Count III is titled damages and claims "excess costs incurred in load testing each of the trusses as well as repairing each of the trusses in the amount of $269,556.82." (Amend. Compl. at ¶23).  Reliable's seeks dismissal of Count II and that portion of Count III, which seeks damages in excess of the $9384.00 Northshore claims it was invoiced for galvanizing the trusses at issue.

## III.    LEGAL STANDARD

In deciding a 12(b)(6) motion to dismiss, all well-pleaded factual allegations of the complaint are accepted as true.  *Factory Mutual Insurance v. Bobst Group*, No. 02-C-283, 2002 WL 1263991, at *2 (N.D. Ill. June 5, 2002).  A claim survives if relief could be granted under any set of facts that could be proved consistent with the allegations.  *Id*.  If, however, when viewed in the light most favorable to the plaintiff, the complaint's allegations fail to state a claim upon which relief can be granted, dismissal is warranted.  *Lefebvre Integraphics v. Sanden*

- 3 -

*Machine Ltd.*, 946 F. Supp. 1358, 1362 (N.D. Ill. 1996); *Roland v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 570 (N.D. Ill. 1999).

Further, and directly applicable to this motion, a court may examine any documents attached to a 12(b)(6) motion to dismiss, if they are referred to in the complaint and are central to plaintiff's claims. *Factory Mutual Insurance* at *2. The complete two-sided invoices that comprise the Agreement meet this test. First, both invoices are attached to the Amended Complaint, albeit incompletely. Second, there can be no dispute that these invoices are central to Northshore's claim because these invoices contain terms of the parties' agreement. Therefore, they may be considered for purposes of Reliable's motion to dismiss.

## IV.    ARGUMENT

### A.    Northshore's Breach of Implied Warranty Claim Should Be Dismissed Because the Parties' Agreement Is Not Governed By the Uniform Commercial Code

Count II of Northshore's Amended Complaint seeking damages for breach of implied warranty should be dismissed because Article 2 of the Uniform Commercial Code does not govern Northshore's transaction with Reliable. The implied warranties of merchantability and fitness for a particular purpose are solely creations of the UCC, which has been adopted through the Illinois Commercial Code. *See* 810 ILCS 5/2-314(1) (1961) and 810 ILCS 5/2-314(2) (1961); *NIM Plastics Corp. v. Standex Int'l Corp.*, 11 F. Supp. 2d 1003, 1005 (N.D. Ill. 1998); *Midland Supply Co. v. Ehret Plumbing & Heating Co.*, 440 N.E. 2d 153, 156 (5th Dist. 1982). Thus, a cause of action for breach of implied warranty will not exist unless the UCC governs the parties' transaction. *Id.* Here, the UCC does not apply to the galvanizing services Reliable rendered.

The UCC applies only to "transactions in goods." 810 ILCS 5/2-102; *NIM Plastics Corp.* at 1005. In an Article 2 sales transaction, title in a "good" (a movable thing) passes from

seller to buyer. 810 ILCS 5/2–105 (1961); 810 ILCS 5/2–106 (1961); *NIM Plastics Corp.* at 1005. Article 2 does not apply to a contract for services. *NIM Plastics Corp.* at 1005. If a contract involves both goods and services, Illinois courts employ the "predominance test" to determine the purpose of the agreement. *Id.* Under the predominance test, if the contract's primary purpose is for the sale of goods, then Article 2 applies. *Id.* On the other hand, if the contract's primary purpose is for services, Article 2 does not apply. *Id.*

*NIM Plastics Corp. v. Standex International Corp.*, 11 F. Supp. 2d 1003 (N.D. Ill 1998), analyzed the predominance test in a factual setting virtually identical to the case at bar. Plaintiff NIM Plastics Corp. ("NIM") sold treated "film" and "sheets" to its customers. *Id.* NIM retained a company called Mold-Tech to perform an "etching" process on these products before NIM's final product was delivered to customers. *Id.* NIM filed suit against Mold-Tech's parent company after NIM received film sheets it claimed were "non-conforming." *Id.* NIM's breach of implied warranty claim was dismissed *with prejudice* after the trial court determined that the UCC did not govern this transaction. *Id.* In reaching its decision, the court found that the contract between the parties did not involve the sale of a moveable good, and that no title to the goods passed between the parties. *Id.* Rather, the court found that Mold-Tech's etching process was predominantly a service, and, therefore, the UCC was inapplicable. *Id.*

Here, Northshore contracted for services from Reliable. Reliable agreed to galvanize steel trusses. (Amend. Compl. at ¶2). Although the trusses are a movable good, the primary purpose of the contract was not for the sale of trusses, which were already sold to Lakehead Constructors, the general contractor at the Consumer Energy project. (Amend. Compl. at ¶10). Rather, the contract was for the performance of galvanizing, which was done at the general contractor's request. (Amend. Compl. at ¶2). Although Reliable took possession of the trusses

for a finite period, title of the trusses never passed from Northshore to Reliable. (Amend. Compl. at ¶3). Accordingly, Reliable and Northshore have entered an agreement for services for which the UCC does not govern. Therefore, Northshore does not have a valid claim for breach of implied warranty, and Count II should be dismissed with prejudice pursuant to 12(b)(6).

> **B.**    **Northshore's Breach of Implied Warranties Claim Should be Dismissed Because the Agreement Effectively Disclaims Any Such Warranties**

Even if the UCC is found to govern this transaction, then the Agreement's terms and conditions conspicuously disclaim the implied warranties of merchantability and fitness for a particular purpose, and, therefore, dismissal of Count II is still required. Parties to a commercial transaction are free to exclude all implied warranties. 810 ILCS 5/2-316(3)(a) (1982); *Lefebvre Integraphics* at 1362. An effective disclaimer uses the word "merchantability" in the warranty, or uses language which calls the buyer's attention to the exclusion of warranties and makes plain that no implied warranty exists. *Id*; *Bell Fuels v. Lockheed Electronics,* 130 Ill. App. 3d 940, 945 (5th Dist. 1985). Further, disclaiming language should be presented in its own paragraph and in large-type capital letters so that the disclaimer is clearly communicated. *Id.* at 945; *Roland* at 572. Where the disclaiming language is clear and conspicuously presented, no cause of action for breach of implied warranty is proper, and such a claim will be dismissed. *Lefebvre Integraphics* at 1363 (granting motion to dismiss where purchase agreement plainly excludes all express and implied warranties); *Id.* (granting motion to dismiss where warranty certificate contained conspicuous language to disclaim implied warranties); *Bell Fuels* at 945 (granting motion to dismiss because presence of conspicuous disclaimer of implied warranties means that plaintiff has failed to state a claim upon which relief may be granted).

Reliable's disclaimer complies with these requirements. Paragraph 6 of the Agreement states in pertinent part in capital letters:    "THERE ARE NO IMPLIED WARRANTIES

HEREUNDER, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE." *See* Ex. 1. This paragraph is separated from the other paragraphs and the terms "merchantability" and "fitness for a particular purpose" are used. *Id.* Such disclaiming language and its presentation clearly meets the legal requirements for enforcement. Therefore, Count II should be dismissed.

C.     **Northshore's Claim for Damages in Excess of Its Processing Fee Should Be Dismissed Because the Agreement Precludes Recovery of Extra-Contractual Damages**

Northshore's claim for $260,172.82 in extra-contractual damages for load testing and the alleged cost of repairs (Count III at ¶23) should be dismissed because the Agreement limits Northshore's remedy in the event of breach to reprocessing the trusses or repayment of the $9384.00 processing fee. (Ex. 1 at 12). The UCC permits commercial contractors, like Reliable, to limit the contractual remedies available in the event of an alleged breach. 810 ILCS 5/2-719 (1961). Such limited remedies are also enforceable at common law. *Hicks v. Airborne Express*, 858 N.E.2d 48, 53 (5th Dist. 2006); *Moody v. Federal Express Corp.*, 858 N.E.2d 918, 923 (5th Dist. 2006). In particular, a contractor may limit its remedy to repair and replacement of the goods at issue unless such a limitation would deprive a buyer of any remedy at all. *Lefebvre Integraphics* at 1370. Where a limited remedy provision does not deprive plaintiff of all remedies, but simply limits available remedies, the contractual provision is not unreasonable, and it is, therefore, enforceable. *Id.* at 1372. A motion to dismiss is a proper vehicle to seek enforcement of such a limited remedy provision and to dismiss those portions of a plaintiff's complaint that seeks precluded damages. *See, e.g., Roland*, at 574.

Here, Paragraph 12 of the Agreement limits Northshore's available remedies to (1) reprocessing of the goods or (2) repayment of the processing fee. *See* Ex. 1. Such a provision is reasonable and enforceable. *Lefebvre Integraphics* at 1370. Reliable has, therefore, effectively

limited Northshore's remedy to reprocessing the trusses or refunding any payment Northshore made. Nowhere in its complaint does Northshore claim that it has sought this remedy or that Reliable failed to provide the limited remedy it offered. Instead, Northshore seeks to avoid this limitation altogether and recover damages for load testing which constitutes consequential damages excluded by Reliable's limited remedy. Accordingly, Northshore's contractual provision should be enforced and Northshore should be limited to the amounts it claims to have paid Reliable for the processing of the trusses ($9,384.00) and any claim for additional amounts should be stricken.

## V.    CONCLUSION

WHEREFORE, for the foregoing reasons, Reliable respectfully requests that this Court dismiss Count II of Northshore's amended complaint in its entirety with prejudice; that the Court enforce the Agreement's limited remedy provision and dismiss and/or strike Northshore's claim for extra-contractual damages above Reliable's contract price; and, grant Reliable any further relief that this Court deems just and proper.

Respectfully submitted,

RELIABLE GALVANIZING COMPANY

By:    _____ /s/ J. David Duffy _____
        One of Its Attorneys
        Thompson Coburn LLP

J. David Duffy
Lauren Spira
Thompson Coburn LLP
    d/b/a Thompson Coburn Fagel Haber
55 E. Monroe, 40th Floor
Chicago, IL 60603
312-346-7500

4753797_4

- 8 -

# EXHIBIT 1

# RELIABLE GALVANIZING CO.

819 W. 88th Street • Chicago, Illinois 60620-2668
Phone (773) 651-2500
FAX (773) 488-7100
email: info@reliablegalvanizing.com

**INVOICE # 20192**

**Page 1**

Terms: 1/2 of 1%, 10 Days, net 30 Days

| PURCHASE ORDER NO. | DATE INVOICED | FREIGHT | F.O.B. | SHIPPED VIA |
|---|---|---|---|---|
| 4808 | 07/25/06 | COLLECT | 819 W. 88TH STREET CHICAGO, IL 60620-2668 | BROWN'S |

NDRO1

SOLD TO:
NORTH SHORE STEEL, INC.
P.O. BOX 247
TWO HARBORS, MN 55616

SHIP TO:
CONSUMER ENERGY
J.H. CAMPBELL COMPLEX
17000 CROSWELL
WEST OLIVE, MI 49460

| No. of PCS. | DESCRIPTION | WEIGHT | PRICE PER CWT | AMOUNT |
|---|---|---|---|---|
| 1 | GALV. FABRICATED STEEL PARTIAL ORDER | 35,100 | 150.00 | 5,265.00 |
|  |  | 35,100 |  | 5,265.00 |
|  |  |  | PAY THIS AMOUNT | 5,265.00 |

THE GOODS OR SERVICES COVERED BY THIS INVOICE ARE FURNISHED IN COMPLIANCE WITH THE REQUIREMENTS OF THE FAIR LABOR STANDARDS ACT OF 1938 AS AMENDED.
CLAIMS MUST BE MADE WITHIN 10 DAYS AFTER DELIVERY. MERCHANDISE NOT TO BE RETURNED WITHOUT OUR PERMISSION.

## TERMS AND CONDITIONS OF SALE

We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended and of regulations and orders of the United States Dept. of Labor issued under Section 14 thereof. It is hereby certified that the price(s) charged for the commodities or service furnished hereunder is in compliance with the provisions of all applicable maximum price laws or regulations.

1. Processor prices are subject to change without notice, and all orders and contracts are accepted subject to prices in effect at time of order.

2. All prices are quoted f.o.b. processors plant unless otherwise specified.

3. The amount of any tax which processor may be required to pay or collect under any existing or future law upon or with respect to the sale, purchase, delivery, storage, processing, use, consumption or transportation of goods or services covered hereby shall be for the account of customers, and shall be added to the prices of such services. Customer shall promptly furnish any resale or other exemption certificates requested by processor where exemption from tax is claimed.

4. Terms are: 1/2 of 1%, 10 days, Net 30 days from date of shipment.

5. Processor reserves the right at any time to set reasonable interest charges on unpaid balances or invoices and to alter or suspend credit, to change the normal credit terms of net cash (30) thirty days from date of invoice.
   In the event that collection service or legal action is necessary for recovery of sums owing past terms, all expenses shall be added to the principal amount and with any interest of 18% per annum become payable upon demand or included in recoverable monies. Illinois Law to Govern.

5. Payments shall become due as shipments are made. If shipments are delayed by the Customer, payments shall become due on the date when the processor is prepared to make shipment. If the work to be performed hereunder is delayed by the Customer, payments shall be made based on the purchase price and the percentage of completion. Material held for the customer shall be at risk and expense of the Customer.
   If the financial condition of the Customer at any time does not, in the judgement of the processor, justify continuance of the work to be performed by the processor hereunder on the terms of payment as agreed upon, the processor may require full or partial payment in advance or shall be entitled to cancel any order then outstanding and shall receive reimbursement for its reasonable and proper cancellation charges, and in the event of bankruptcy or insolvency of the customer or in the event any proceeding is brought against the customer, voluntarily or involuntarily, under the bankruptcy or any insolvency laws, the company will be entitled to cancel any order then outstanding at any time during the period allowed for filing against the estate and shall receive reimbursement for its reasonable and proper cancellation charges. Illinois Law to Govern.

6. THERE ARE NO EXPRESS WARRANTIES HEREUNDER. THERE ARE NO IMPLIED WARRANTIES, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, EXCEPT THAT GOODS WILL COMPLY WITH THE DESCRIPTION CONTAINED ON THE FACE OF THIS INVOICE/ACKNOWLEDGEMENT, SUBJECT TO STANDARD MANUFACTURING VARIATIONS.

7. Processor will use all reasonable efforts to comply with customers requests as to shipments but processor reserves the right to use an alternate method of transportation or route of shipment whether or not at a higher rate if substantial delay might otherwise occur in such cases processor will notify customer of such changes as soon as reasonably possible.

8. If material should arrive at customers destination in a damaged condition, or should a shortage exist, the damage or shortage must be immediately called to the attention of delivering carrier and processor, and in case of damaged material, a joint inspection of still loaded carriage, car or truck or barge must be arranged with representatives of the carrier and processor. Any loss occasioned by damage in transit will be for the customers account.

9. Processor will use all reasonable means to comply with any packaging, loading and bracing requirements specified in order, and extras due to such requirements of customer will be charged accordingly, if no packaging, loading and bracing requirements are stated by the customer, processor will comply with minimum standards for the method of transportation specified.

10. Claims respecting shortages, condition of the material, compliance with specifications or any other matter affecting the goods must be made by the customer within 7 days of receipt of the material and processor must be given ample opportunity to investigate. The customer must set aside disposition to the made of goods. No goods, in any event shall be returned without first securing the authority of the processor.

11. Processor is not responsible for material warpage, buckling, blistering or breaking whenever such conditions are incidental to the process of hot-dip galvanizing. The processor will assume no responsibilities for ungalvanized areas due to the presence of welding flux. The processor is not liable for loss, damage, detention or delay caused by fire, strike, civil or military authority, insurrection or riot, or other causes beyond its reasonable control.
    The processor is not responsible for unacceptable galvanizing due to materials having a high phosphorus and/or high silicon content.

12. Customers remedies with respect to any goods shall be limited exclusively to the right of reprocessing of such goods or to repayment of the processing charges.

13. Processor shall not be liable for any delay in performance resulting in whole or in part from fires, floods or other catastrophes, strikes, lockouts or labor disruptions, wars, riots or embargo delays, mill conditions, shortages of transportation equipment, fuel, labor or material compliance with any Federal or State law or administrative regulations or any other circumstances or causes beyond processor's control in the reasonable conduct of business.

14. Waiver by processor of any breach of any condition or provision of this agreement shall not be construed as a waiver of any other breach and the failure by processor to exercise any right arising from any default under this agreement shall not be deemed to be a waiver of such right, which may be exercised at any subsequent time.

15. THE TERMS AND CONDITIONS SET FORTH HEREIN SHALL CONSTITUTE THE SOLE TERMS AND CONDITIONS OF THIS CONTRACT. NO OTHER TERMS OR CONDITIONS WHETHER CONTAINED IN CUSTOMERS PURCHASE ORDER, SHIPPING RELEASE, OR ELSEWHERE, SHALL BE BINDING UPON PROCESSOR. ALL PROPOSALS, NEGOTIATIONS AND REPRESENTATION, IF ANY, MADE PRIOR TO THE DATE HEREOF ARE MERGED HEREIN.

16. The prices given are based on the total weight of the material after galvanizing and are F.O.B processors plant unless otherwise specified. The prices are open for acceptance within 30 days from the date of our original quotation. Processor may, 7 days after notification to the customer, revise its quotation upward or downward to conform with the market price of zinc at the time of galvanizing. Notification may be by telephone, confirmed by letter.

17. The customer may cancel its order upon written notification and payment of a charge based on the expense incurred to the date of the processors receipt of the cancellation notice.

18. The processor will consider as standard, mill scale or light storage rust on material received and such cleaning as is necessary to remove this from the material prior to galvanizing is included in the quoted price. Any cleaning or grinding necessary to prepare material for galvanizing other than required to remove such mill scale or light storage rust will be charged to the customer.

19. It is expressly understood that any technical advice furnished by the processor with respect to the use of its goods or services is given without charge, and the processor assumes no obligations or liability for the advice given or results obtained, all such advice being given and accepted at customers risk.



# RELIABLE GALVANIZING CO.
819 W. 88th Street · Chicago, Illinois 60620-2668
Phone (773) 651-2500
FAX (773) 488-7100
email: info@reliablegalvanizing.com

**INVOICE #: 20193**
**Page 1**

**Terms: ½ of 1% 10 Days, net 30 Days**

| PURCHASE ORDER NO. | DATE INVOICED | FREIGHT | F.O.B. | SHIPPED VIA |
|---|---|---|---|---|
| 4896 | 07/25/06 | COLLECT | 819 W. 88th STREET CHICAGO, ILL. 60620-2668 | BROWN'S |
| NOR01 | | | | |

NORTH SHORE STEEL IND.
P. O. BOX 247
TWO HARBORS, MN 55616

CONSUMER ENERGY
J.H. CAMPBELL COMPLEX
17000 CROSWELL
WEST OLIVE, MI 49460

| No. of PCS. | DESCRIPTION | WEIGHT | PRICE PER CWT | AMOUNT |
|---|---|---|---|---|
| | GALV. FABRICATED STEEL PARTIAL ORDER | 27,460 | 15.00 | 4,119.00 |
| | | 27,460 | | **PAY THIS AMOUNT** 4,119.00 |

THE GOODS OR SERVICES COVERED BY THIS INVOICE ARE FURNISHED IN COMPLIANCE WITH THE REQUIREMENTS OF THE FAIR LABOR STANDARDS ACT OF 1938 AS AMENDED. CLAIMS MUST BE MADE WITHIN 10 DAYS AFTER DELIVERY. MERCHANDISE NOT TO BE RETURNED WITHOUT OUR PERMISSION.

## TERMS AND CONDITIONS OF SALE

We hereby certify that these goods were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended and of regulations and orders of the United States Dept. of Labor issued under Section 14 thereof. If the goods and/or the price(s) charged for the commodity or service furnished hereunder is in compliance with the provisions of all applicable maximum price laws or regulations.

1. Processor prices are subject to change without notice, and all orders and contracts are accepted subject to prices in effect at time of order.

2. All prices are quoted f.o.b. processors plant unless otherwise specified.

3. The amount of any tax which processor may be required to pay or collect under any existing or future law upon or with respect to the sale, purchase, delivery, storage, processing, use, consumption or transportation of goods or services covered hereby shall be for the account of customers, and may be added to the prices of such services. Customer shall promptly furnish any resale or other exemption certificates requested by processor where exemption from tax is claimed.

4. Terms are: 1/2 of 1%, 10 days, Net 30 days from date of shipment.

5. Processor reserves the right at any time to set reasonable interest charges on unpaid balances or invoices and to alter or suspend credit, to change the normal credit terms of net cash (30) thirty days from date of invoice.
   In the event that collection service of legal action is necessary for recovery of sums owing past terms, all expenses shall be added to the principal amount and with any interest of 18% per annum become payable upon demand of included in recoverable monies. Illinois Law to Govern.

6. Payments shall become due as shipments are made. If shipments are delayed by the Customer, payments shall become due on the date when the processor is prepared to make shipment. If the work to be performed hereunder is delayed by the Customer, payments shall be made based on the purchase price and the percentage of completion. Material held for the customer shall be at risk and expense of the Customer.
   If the financial condition of the Customer at any time does not, in the judgement of the processor, justify continuance of the work to be performed by the processor hereunder on the terms of payment as agreed upon, the processor may require full or partial payment in advance or shall be entitled to cancel any order then outstanding and shall receive reimbursement for its reasonable and proper cancellation charges, and in the event of bankruptcy or insolvency or in the event any proceeding is brought against the customer, voluntarily or involuntarily, under the bankruptcy or any insolvency laws, the company will be entitled to cancel any order from outstanding at any time during the period allowed for filing against the estate and shall receive reimbursement for its reasonable and proper cancellation charges. Illinois Law to Govern.

7. THERE ARE NO EXPRESS WARRANTIES HEREUNDER. THERE ARE NO IMPLIED WARRANTIES, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, EXCEPT THAT GOODS WILL COMPLY WITH THE DESCRIPTION CONTAINED ON THE FACE OF THIS INVOICE/ACKNOWLEDGEMENT, SUBJECT TO STANDARD MANUFACTURING VARIATIONS.

8. Processor will use all reasonable efforts to comply with customers requests as to shipments but processor reserves the right to use an alternate method of transportation or route of shipment whether or not at a higher rate if substantial delay might otherwise occur in such cases processor will notify customer of such changes as soon as reasonably possible.

9. If material should arrive at customers destination in a damaged condition, or should a shortage exist, the damage or shortage must be immediately called to the attention of delivering carrier and processor, and in case of damaged material, a joint inspection of still loaded carriage, car or truck or barge must be arranged with representatives of the carrier and processor. Any loss occasioned by damage in transit will be for the customers account.

10. Processor will use all reasonable means to comply with any packaging, loading and bracing requirements specified in order, and extras due to such requirements of customer will be charged accordingly, if no packaging, loading and bracing requirements are stated by the customer, processor will comply with minimum standards for the method of transportation specified.

11. Claims respecting shortages, condition of the material, compliance with specifications or any other matter affecting the goods must be made by the customer within 7 days of receipt of the material and processor must be given ample opportunity to investigate. The customer must set aside disposition to be made of goods. No goods, in any event shall be returned without first securing the authority of the processor.

12. Processor is not responsible for material warpage, buckling, blistering or breaking whenever such conditions are incidental to the process of hot-dip galvanizing. The processor will assume no responsibilities for ungalvanized areas due to the presence of welding flux. The processor is not liable for loss, damage, detention or delay caused by fire, strike, civil or military authority, insurrection or riot, or other causes beyond its reasonable control.
   The processor is not responsible for unacceptable galvanizing due to materials having a high phosphorus and/or high silicon content.

13. Customers remedies with respect to any goods processed shall be limited exclusively to the right of reprocessing of such goods or to repayment of the processing charges.

14. Processor shall not be liable for any delay in performance resulting in whole or in part from fires, floods or other catastrophes, strikes, lockouts or labor disruptions, wars, riots or embargo delays, mill conditions, shortages of transportation equipment, fuel, labor or material compliance with any Federal or State law or administrative regulations or any other circumstances or causes beyond processors control in the reasonable conduct of business.

15. Waiver by processor of any breach of any of the terms and conditions of this agreement shall not be construed as a waiver of any other breach and the failure by processor to exercise any right arising from any default of customer under this agreement shall not be deemed to be a waiver of such right, which may be exercised at any subsequent time.

16. THE TERMS AND CONDITIONS SET FORTH HEREIN SHALL CONSTITUTE THE SOLE TERMS AND CONDITIONS OF THIS CONTRACT. NO OTHER TERMS OR CONDITIONS WHETHER CONTAINED IN CUSTOMERS PURCHASE ORDER, SHIPPING RELEASE, OR ELSEWHERE, SHALL BE BINDING UPON PROCESSOR. ALL PROPOSALS, NEGOTIATIONS AND REPRESENTATION, IF ANY, MADE PRIOR TO THE DATE HEREOF ARE MERGED HEREIN.

17. The prices given are based on the total weight of the material after galvanizing and are F.O.B processors plant unless otherwise specified. The prices are open for acceptance within 30 days from the date of our original quotation. Processor may, 7 days after notification to the customer, revise its quotation upward or downward to conform with the market price of zinc at the time of galvanizing. Notification may be by telephone, confirmed by letter.

18. The customer may cancel its order upon written notification and upon payment of a charge based on the expense incurred to the date of the processors receipt of the cancellation notice.

19. The processor will consider as standard, mill scale or light storage rust on material received and such cleaning as is necessary to remove this from the material prior to galvanizing as included in the quoted price. Any cleaning or grinding necessary to prepare material for galvanizing other than required to remove such mill scale and light storage rust will be billed to the customer.

20. It is expressly understood that any technical advice furnished by the processor with respect to the use of its goods or services is given without charge, and the processor assumes no obligations or liability for the advice given or results obtained, all such advice being given and accepted at customers risk.