MHN

FILED
7-30-2008
JUL 3 0 2008 AE

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHSHORE STEEL, INC. | ) | Civil Action No. 08cv2147 |
| | ) | |
| Plaintiff, | ) | Judge Pallmeyer |
| | ) | |
| vs. | ) | Magistrate Judge Denlow |
| | ) | |
| RELIABLE GALVANIZING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF NORTHSHORE STEEL, INC.'S RESPONSIVE MEMORANDUM OF LAW
TO DEFENDANT RELIABLE GALVANIZING COMPANY'S 12(b)(6) MOTION TO DISMISS</u>**

I.
INTRODUCTION

Defendant Reliable Galvanizing Company ("Reliable") raises three arguments why this Court should dismiss Count II of Plaintiff Northshore Steel, Inc.'s ("Northshore") Amended Complaint (claim for breach of implied warranty) and Northshore's claim for the cost of load testing to its damaged trusses (Memorandum of Reliable in Support of its Rule 12(b)(6) Motion to Dismiss ("Memo."), p. 1). First, because the agreement between the parties contained a remedy limitation to reprocessing of the trusses or repayment of its processing charges (Memo., p.1, IV Argument, pp. 7, 8). Second, because the parties' agreement did not involve the sale of goods and therefore the Illinois Uniform Commercial Code does not apply ("ILCS") (Memo., p 17, IV Argument A, pp. 4, 5). And third, because the agreement between the parties disclaimed all implied warranties (Memo., p. 1, IV Article B, pp. 6, 7).

For purposes of its motion, Reliable refers to the two-sided invoices as the "Agreement" between the parties (Memo., pp. 2, 4). As will be shown, however, these invoices are

1

insufficient under Illinois law to impose remedy limitations or disclaimer language on Northshore. Finally, it will be further shown that the transaction between Northshore and Reliable falls within the ambit of the UCC because it involved the sale of moveable goods with title passing to Lakehead Contractors, the general contractor at the Consumer Energy project.

## II.
## NORTHSHORE ALLEGATIONS

Northshore incorporates herein by reference as though set forth verbatim herein, each and every allegation contained in its Amended Complaint.

## III.
## LEGAL STANDARD

Northshore agrees with the legal standard enunciated by Reliable that the Court is to use on a motion to dismiss (Memo., pp. 2, 3) but disagrees that the invoices relied on by Reliable as the Agreement between the parties support this standard (Memo., p. 4). Northshore further adds that "A complaint will not be dismissed on a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him or her to relief." *Nim Plastics Corporation vs. Standex International Corporation*, 11 F.Supp.2d 1003, 1004 (N.E. Ill. 1998, citing *Welczynski vs. Lumbermen's Mut. Cas. Co.*, 93 F.3d 397, 401 (7th Cir. 1996).

## IV.
## ARGUMENT

### A.
### NORTHSHORE'S TRANSACTION WITH RELIABLE IS GOVERNED BY ARTICLE 2 OF THE ILLINOIS UNIFORM COMMERCIAL CODE.

Reliable's first argument in support of its motion to dismiss is that Count II of Northshore's Amended Complaint seeking damages for breach of implied warranty should be

2

dismissed because the UCC does not apply to the galvanizing services Reliable rendered (Memo., IV Argument A., pp. 4, 5).

Reliable correctly states that under Illinois law the "predominance test" is used to determine whether a contract for both the sale of goods and the rendition of services falls within the scope of Article 2 of the UCC. 810 ILCS 5/2-101-2-725 (West 2004). *Jannusch vs. Naffziger*, 883 N.E.2d 711, (4th Dist. 2008). "Whether the contract was predominantly for goods or services is generally a question of fact." *Id.* at 714, citing *Heuerman vs. B&M Construction, Inc.*, 358 Ill. App. 3rd 1157, 1165, 295 Ill. Dec. 549, 833 N.E.2d 382, 389 (2005). Reliable cites *Nim* in support of its proposition that the galvanizing constituted a service rather than a sale of goods. That case can be distinguished, however, on clear substantive grounds, making it inapplicable to sustain Reliable's contention.

First, "the agreement between *Nim* and *Mold-Tech* called for *Mold-Tech* to 'refinish' and 'etch' *Nim's* existing Roll. . . *Mold-Tech's* refinishing and etching work on *Nim's* Roll, which merely was to result in a 'new service' on an existing Roll, cannot be considered 'movable' as required under the UCC's definition of goods. Further *Mold-Tech's* work and eventual refinishing of, the surface of the Roll which Roll *Nim* owned throughout the transaction at issue here – does not constitutes a sale with a 'passing of title,' as defined by the UCC. In short, the 'new service' is not an identifiable 'movable thing' as contemplated by the UCC definition of a 'good,' and the 'new service' was not sold in the sense that 'title' to it could be passed." *Id.* at 1005.

Here, and as conceded by Reliable (Memo., p. 10), the trusses are a movable good, and unlike *Nim*, title to the trusses was to be passed to Consumer Electric once the trusses had been

3

galvanized and delivered to the job site by Reliable. Thus, the trusses and their galvanizing reflected a transaction of sale with labor incidentally involved by Reliable with respect to galvanizing the trusses before they were sold and title passed to Consumer Electric. As the *Nim* court stated, "If the contract's 'primary purpose' is the sale of goods, then the entire contract falls within the ambit of the UCC (*Nim* at 1005, citing *Meeker vs. Hamilton Grain Elevator Company*, 110 Ill. App. 3rd 668, 670, 66 Ill. Dec. 360, 442 N.E.2d 921, 922 (4th Dist. 1982).

Consequently, the relationship between Northshore and Reliable involved the sale of a movable good to which title would pass once Reliable performed the galvanizing and shipped the trusses to the job site. Accordingly, the UCC applies.

### B.
### RELIABLE'S DISCLAIMER LANGUAGE CONTAINED IN ITS INVOICES IS INEFFECTIVE BECAUSE IT DID NOT FORM A PART OF THE BASIS OF THE BARGAIN.

Reliable next urges this Court to dismiss Northshore's breach of implied warranty claim because the invoices effectively disclaim such warranties (Memo., IV Argument B., pp. 6, 7) which is allowed under 810 ILCS 5/2-316(3)(a) (1982). This section of the UCC only requires that the disclaimer be in writing, be conspicuous and form a part of the basis of the bargain. *Bowdoin vs. Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987).

The only documentation exchanged between Northshore and Reliable were the initial facsimile negotiations, Northshore's bills of lading and Reliable's invoices and material certification (Amended Complaint ("Amend. Compl."), ¶¶1, 5, 6 and 7). The invoices were mailed to Northshore <u>after</u> the sale had been made, i.e. after the trusses had been galvanized and shipped by Reliable to the job site (Amend. Compl., ¶¶6 and 7). Since the disclaimer language is contained in invoices delivered after the sale, such a post-sale disclaimer is

4

ineffective under Illinois law because the disclaimer language never formed part of the basis of the bargain between the parties.

> In order to disclaim the warranties that attached to the sales of WP12s, the 2000 and 2003 catalogs must have formed the basis of the bargain between the parties. *See* 67A Am.Jur.2d Sales §759 (West 2006) ('Because the Uniform Commercial Code requirements regarding disclaimer are imposed for the purpose of protecting a buyer from unexpected and unbargained surprises, a limitation or disclaimer of warranties will be given effect only if it formed part of the basis of the bargain when the sales contract was entered into.

*Accurate Transmissions, Inc. vs. Sonnar Industries, Inc.*, 2007 WL 1773195 at *4 (N.D. Ill. June 14, 2007). See, also, *Bowdoin*, supra at 1546, wherein the Appellate Court for the 11th Circuit cited decisions from other courts holding that a post-sale disclaimer clause is ineffective under the same provisions of the Uniform Commercial Code.

### C.
### NORTHSHORE'S CLAIM FOR DAMAGES IN EXCESS OF ITS PROCESSING FEE SHOULD NOT BE DISMISSED BECAUSE THESE DAMAGES FLOWED DIRECTLY FROM RELIABLE'S BREACH OF CONTRACT AND ARE NOT PRECLUDED BY ANY AGREEMENT BETWEEN THE PARTIES.

Northshore seeks damages in the amount of $269,556.82 for load testing that was performed at the request of Consumer Energy to determine the trussses' integrity. This amount was withheld by the general contractor from what Northshore was due under its contract with the general contractor (Amend. Compl., ¶12). The Appellate Court of Illinois, Fifth District, has determined these costs to be a reasonable incidental expense under the UCC. *S. M. Wilson & Co. vs. Reeves Red-E-Mix Concrete, Inc.*, 39 Ill.App.3d 353, 350 N.E.2d 321, 325 (5th Dist. 1976). Load testing does not constitute consequential damages as claimed by Reliable (Memo., p. 8).

And under the common law load testing would be included in the measure of damages flowing from the breach.

But Reliable argues that it had an "Agreement" with Northshore that precludes Northshore from recovering anything but a $9,384.00 processing fee (Memo., p 7). Reliable claims the Agreement, for purposes of this motion, is the "complete two-sided invoices" (Memo., pp. 2, 4). It is Reliable's position that the limited remedy provision contained in those invoices is permitted by the UCC and enforceable at common law (Memo., p 7.).

The trusses were shipped by Northshore to Reliable on or about June 28, 2006 (Amend. Compl., ¶5, Exhibit B). Reliable performed the galvanizing and shipped the galvanized trusses to the Michigan job site on July 25, 2006 and July 28, 2006 (Amend. Compl., ¶7, Exhibit D). The invoices are dated July 25, 2006 (Amend. Compl., ¶6). If the invoices constituted the agreement between the parties as contended by Reliable (Memo., p. 7), that would mean that Reliable performed the galvanizing and shipped the goods to the job site in Michigan before it had any kind of contract with Northshore, which is unlikely. Rather, what is more likely is what is alleged in the Amended Complaint, namely, that a verbal agreement was reached between the parties in the Spring of 2006 for Reliable to perform the galvanizing to the trusses at fifteen cents per pound and, upon completion, to ship the galvanized trusses to the job site in Michigan (Amend. Compl., ¶¶1, 2 and 3).

But even if the invoices constituted the agreement between the parties as urged by Reliable, under the UCC Northshore was denied the opportunity to seasonably object to the remedy limitation contained in the invoices because these invoices were mailed to Northshore

6

AFTER the trusses had been galvanized and shipped by Reliable to the job site (Amend. Compl., ¶¶6, 7). 810 ILCS 5/2-207(2)(c) gives Northshore the right to a seasonable objection:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>   (a) the offer expressly limits acceptance to the terms of the offer;
>   (b) they materially alter it; or
>   (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

It was impossible for Northshore to seasonably object and therefore the remedy limitation language relied on by Reliable must be excluded pursuant to 810 ILCS 5/2-207(2)(c). See, *Southern Illinois Riverboat Casino Cruises, Inc. vs. Triangle Insulation and Sheet Metal Company*, 302 F.2d 667, 676 (7th Cir. 2002), wherein the Appellate Court observed that remedy limitations could be excluded on this ground.

Likewise under common law, while limited remedies have been held enforceable (Memo., p. 2), the remedies can only be limited by express agreement between the parties. "Parties by an express agreement may contract for an exclusive remedy that limits their rights, duties and obligations." *Hicks vs. Airborne Express*, 367 Ill.App.3d 1005, 858 N.E.2d 48, 54 (5th Dist. 2006), citing *Board of Regents vs. Wilson*, 27 Ill.App.3d 31, 32, 326 N.E.2d 216 (1975). Generally, express contracts are those in which the terms of the contract or agreement are openly and fully uttered and avowed <u>at the time of making</u>. *Bartolo vs. Skaggs Const. Co., Inc.*,

25 Ill.App.3d 117, 323 N.E.2d 123 (1975), *Turner vs. Owen*, 122 Ill.App. 501 (1905) (Emphasis added). An express contract is proven by an actual agreement, or by the expressed words used by the parties. In re *Brumshagen's Estate*, 27 Ill.App.2d 14, 169 N.E.2d 112 (1960). With respect to remedy limitation language, "the contract, however, must clearly indicate that the intent of the parties was to make the stipulated remedy exclusive. *Board of Regents* at 32, citing *Standard Oil Co. vs. Burkhartsmeier Cooperage Co.*, 33 Ill.App. 338, 348-49, 77 N.E.2d 526, 532 (1948), *Continental Grain Co. vs. Feglis Construction Co., Inc.*, 480 F.2d 793, 796 (8th Cir. 1973).

The Court in *Hicks* cited several cases as examples of express agreements containing remedy limitation clauses that were upheld. *O'Sheild vs. Lakeside Bank*, 335 Ill.App.3d 834, 269 Ill.Dec. 924, 781 N.E.2d 1114 (2002), involved a contract for the sale of real estate that limited damages to return of earnest money. *Board of Regents* involved four construction contracts; *Martindell vs. Lake Shore National Bank*, 15 Ill.2d 272, 283, 154 N.E.2d 683 (1958) an option contract; *W.E. Erickson Construction, Inc. vs. Chicago Title Insurance Co.*, 266 Ill.App.3d 905, 204 Ill.Dec. 431, 641 N.E.2d 861 (1994) a title insurance commitment; *Omnitrus Merging Corp. vs. Illinois Tool Works, Inc.*, 256 Ill.App.3d 31, 195 Ill.Dec. 701, 628 N.E.2d 1165 (1993) a merger agreement; *Veath vs. Specialty Grains, Inc.*, 190 Ill.App.3d 787, 137 Ill.Dec. 892, 546 N.E.2d 1005 (1989) a premium corn production agreement; *Schultz vs. Jackson*, 67 Ill.App.3d 889, 24 Ill.Dec. 395, 385 N.E.2d 162 (1979) a contract to purchase a grain drier; *J.D. Pavlak, Ltd. vs. William Davies Co.*, 40 Ill.App.3d 1, 351 N.E.2d 243 (1976) a sales confirmation; and *Dow Corning Corp. vs. Capitol Aviation, Inc.*, 411 F.2d 622 (7th Cir. 1969) a contract to purchase an airplane. All of these contracts contained remedy limitation language agreed to by the parties at the inception of their relationship before any goods were shipped or work begun.

The same is true in the case of *Intrastate Piping & Controls, Inc. vs. Robert-James Sales, Inc.*, 315 Ill.App.3d 248, 248 Ill.Dec. 43, 733 N.E.2d 718 (2000), another decision cited with approval by the Court in *Hicks*. That case turned on remedy limitation language contained in a sales order acknowledgement sent the same day the agreement was made but prior to any product being shipped. The issue in this case was whether the remedy limitation clause became part of the contract by operation of statute because the buyer failed to seasonably object to it. The Court held that it did.

Here, a verbal agreement was reached when Reliable agreed to galvanize and ship the trusses at a set price (Amend. Compl., ¶¶1, 2, 3). The verbal agreement was reached between the parties before the trusses were shipped to Reliable (Amend. Compl., ¶¶2, 5). The verbal agreement pre-dates the invoices (Amend. Compl., ¶¶1, 2, 3, 5 and 6). The remedy limitation language relied on by Reliable is contained in the invoices (Memo., pp. 2, 3, IV Argument C, pp. 7, 8). The invoices were simply a subsequent communication made by Reliable after the verbal agreement had been reached and the remedy limitation contained in them certainly is not binding on Northshore.

Consistent with Northshore's allegations is the fact that there was no express agreement between them that contained remedy limitation language as required under common law. Invoices containing such language sent after the verbal agreement was made and the contract completed, do not satisfy this basic requirement. Thus, the remedy limitation language contained in these invoices must be excluded for common law purposes not only because of the absence of an express agreement containing such language when the verbal agreement was formed, but also because said language did not form a part of the basis of the

bargain as earlier discussed with respect to the disclaimer language also contained in the invoices.

### IV.
### CONCLUSION

WHEREFORE, for the reasons above given, Northshore respectfully submits that it has met the standard to allow this Court to dismiss in its entirety Reliable's 12(b)(6) motion because Northshore has shown that it can establish a set of facts to support Count II of its Amended Complaint for implied breach of warranty as well as its claim for the cost of load testing to its damaged trusses that would entitle it to the relief it is seeking.

Dated: July 29, 2008.

RESPECTFULLY SUBMITTED,

NORTHSHORE STEEL, INC.

By *Kenneth D. Butler*

Kenneth D. Butler, Ltd.
Kenneth D. Butler, #13791
11 East Superior St., #555
Duluth, Minnesota 55802
Telephone: (218) 625-2264

Attorney for Plaintiff

10