## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NORTHSHORE STEEL, INC.,** | |
| **Plaintiff,** | **CASE NO. 08 CV 2147** |
| **vs.** | |
| **RELIABLE GALVANIZING COMPANY,** | **JUDGE PALLMEYER** |
| **Defendant.** | **MAG. JUDGE DENLOW** |

### DEFENDANT RELIABLE GALVANIZING COMPANY'S REPLY TO ITS 12(b)(6) MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

### I.      INTRODUCTION

Defendant Reliable Galvanizing Company's ("Reliable") effort to transform its service agreement with Plaintiff Northshore Steel, Inc.'s ("Northshore") into an agreement governed by the UCC is unavailing.  Case law from this Court demonstrates that the service agreement is not governed by the UCC, and as a consequence, Count II of Northshore's amended complaint for breach of implied warranties provided by the UCC should be dismissed with prejudiced.  *NIM Plastics Corp. v. Standex Int'l Corp.*, 11 F. Supp. 2d 1003 (N.D. Ill. 1998); *IMI Norgren v. D & D Tooling Mfg.*, No. 00-C-5789 *3, 2003 WL 21501783 (N.D. Ill. June 25, 2003).  Further, Northshore's reliance upon facts not alleged in its complaint to demonstrate that the limited remedy provision contained in Reliable's invoices are unenforceable is insufficient to defeat Reliable's motion.  Therefore, Northshore's claim for damages greater than the amount it paid Reliable should be dismissed.

### II.      ARGUMENT

#### A.      Count II - Breach of Implied Warranty - Should Be Dismissed Because the UCC Does Not Govern the Parties' Agreement

Northshore's claim for breach of implied warranty only exists if the UCC governs the galvanizing services Reliable performed for Northshore.  *NIM Plastics Corp. v. Standex Int'l*

*Corp.*, 11 F. Supp. 2d 1003, 1005 (N.D. Ill. 1998); *Midland Supply Co. v. Ehret Plumbing & Heating Co.*, 440 N.E. 2d 153, 156 (5th Dist. 1982); 810 ILCS 5/2-314(1) (1961). Therefore, it is not surprising that Northshore unpersuasively tries to distinguish the *NIM Plastics Corporation* (*"NIM"*) case from the present case to save its implied warranty claim.

Where, as here, services are the contract's predominate feature, the UCC is inapplicable. *See Russo v. NCS Pearson*, 462 F. Supp. 2d 981, 997 (D. Minn. 2006); *Miller Farms Nursery v. Nedegaard Const.*, No. 02-15941 *1, 2003 WL 21500052 (9th Cir. June 26, 2003) (holding that agreement for construction of a retaining wall and paving of a parking lot was a contract for services). Northshore cites no authority supporting its contention that Reliable's galvanizing service falls within the UCC. Northshore also does not contest *NIM*'s holding that, like the galvanizing performed on the trusses, the "refinishing and etching work on *NIM*'s Roll . . . merely was to result in a 'new service' on an existing roll," and was, therefore, not a movable good within the meaning of the UCC. (Resp. at 3.) Northshore, instead, focuses upon the fact that, unlike the present case, in *NIM* no actual sale of the film roll to a customer had taken place. Northshore argues that *NIM* is inapplicable because the transaction that should determine whether the UCC applies here is the ultimate transfer of galvanized trusses to Northshore's customer. But the contract between Northshore and its customer is not the contract at issue. The contract at issue is the contract between Northshore and Reliable for galvanizing services. Reliable neither manufactured the trusses, nor did it have any contract with Northshore's customer. Therefore, Northshore's logic is untenable and, even if the UCC might conceivably govern Northshore's contract with its customer, Northshore provides no legal basis to find that the UCC would, therefore, control its service contract with Reliable.

This Court in *IMI Norgren v. D & D Tooling Mfg*., No. 00-C-5789 *3, 2003 WL 21501783 (N.D. Ill. June 25, 2003), actually rejected Northshore's argument.  In that case, D & D Tooling ("D & D") was sued by its customer, IMI Norgren, for providing defective finger lever parts.  *Id. at *2.*  D & D, in turn, third-partied its subcontractor Metals Technology, which performed "heat treatment" (a process that sounds markedly similar to galvanizing) on the finger levers before they were shipped to IMI Norgren.  *Id.*  Like Northshore, D & D claimed that the goods its customer received were defective because of the inadequate heat treatment performed by Metals Technology.  *Id.*  Like Reliable, Metals Technology sought dismissal of D & D's implied warranty claim because its service contract with D & D was not governed by the UCC. *Id. at *3.*  This Court agreed with Metals Technology and rejected D & D's implied warranty claim.  *Id.*  In finding it "clear that the UCC does not govern the parties' agreement," this Court found that Metals Technology, like Reliable, was contracted "to service goods provided by D & D."  *Id.*  Also like Reliable, Metals Technology did not "sell any goods to D & D."  *Id.*  The court found that D & D, like Northshore, "provided these goods to Metals Technology only for Metals Technology to heat treat them."  *Id. at *1.*  The Court then concluded that the change in physical custody of the goods between the parties was incidental to the transaction and had no effect on determining whether the UCC applied.  *Id. at *3.*  The Court's strong reasoning in *IMI Norgren* should control the Court's decision in the present case and Count II for breach of implied warranty should be dismissed with prejudice as a matter of law.

B.    **Northshore's Claim for Damages in Excess of the Limited Remedy Should be Dismissed**

In its response, Northshore does not contest that Reliable's invoices limited  Northshore's remedy to the "right of reprocessing" or "repayment of the processing charges."  Rather, Northshore relies on facts not pled in its complaint to argue that the exclusive remedy provision

contained in the invoices it attached to its complaint are unenforceable because they were not part of the parties' contract.  The reliance upon facts not pled in Northshore's complaint is insufficient to defeat Reliable's motion.  *See*, *e.g.*, *Lofton v. Covington*, No. 90 C 6588, 1991 WL 133837 (N.D. Ill. 1987) (refusing to consider facts made in argument that were outside of the complaint's four corners).  Specifically, Northshore claims that the invoices were "mailed to Northshore <u>after</u> the sale was made, i.e. after the trusses had been galvanized and shipped by Reliable to the job site."  (Resp. at 4, citing Amend. Compl. ¶¶ 6 and 7).  The complaint, however, lacks any corresponding factual allegations supporting these assertions.  Indeed, the date on the invoices suggests that Northshore may have had the invoices before any trusses ever left Reliable's facility.  Under such facts, there would be ample opportunity for Northshore to have objected to the terms and indicated that they were not part of the contract.  Northshore's response clearly shows that no such objection was ever made.

Even if Northshore is entitled to an inference that Northshore was completely unaware of the invoice terms and the invoices were, in fact, delivered after the goods were shipped, the invoice terms could still be enforced.[1]  *See  Swanson Bros. Lumber Co. v. Van Waters & Rogers*, 972 F.2d 1343, 1344 (9th Cir. 1982) (acknowledging that a post-sale warranty disclaimer and limitation of remedy may be enforceable if brought to the party's attention and is made part of the party's agreement).  Consequently, the limited remedy provisions contained in the invoices should be enforced and Reliable's motion to limit the amount of damages being sought should be granted.

---

[1] If this portion of Reliable's motion is denied, and the case proceeds, Reliable believes evidence will be presented demonstrating that Northshore received identical invoices as part of the parties' course of dealing.

## IV.    CONCLUSION

Because the UCC does not govern Northshore's contract with Reliable, Count II for breach of implied warranty should be dismissed with prejudice; and, because Reliable's limited remedy provision is enforceable, Northshore's claim for damages in excess of the amount it paid Reliable should also be dismissed.

Respectfully submitted,

RELIABLE GALVANIZING COMPANY

By:    _____/s/ J. David Duffy_____
        One of Its Attorneys
        Thompson Coburn LLP

J. David Duffy
Lauren Spira
Thompson Coburn LLP
  d/b/a Thompson Coburn Fagel Haber
55 E. Monroe, 40th Floor
Chicago, IL 60603
312-346-7500

4785026_1

- 5 -